**David H. Becker (OSB # 081507)**
Law Office of David H. Becker, LLC
4110 SE Hawthorne Blvd. # 168
Portland, OR 97214
(503) 388-9160
davebeckerlaw@gmail.com

**Oliver J. H. Stiefel (OSB # 135436)**
oliver@crag.org – (503) 227-2212
**Maura C. Fahey (OSB # 133549)**
maura@crag.org – (503) 525-2722
Crag Law Center
3141 E Burnside Street
Portland, Oregon 97214
Fax: (503) 296-5454

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PENDLETON DIVISION

| | |
|---|---|
| **STOP B2H COALITION**, *et al.* | Case No. 2-19-cv-01822-SI |
| Plaintiffs, | |
| v. | **PLAINTIFFS'** |
| | **SUR-REPLY TO REPLY IN** |
| **BUREAU OF LAND MANAGEMENT**, *et al.*, | **SUPPORT OF MOTION TO STRIKE** |
| | **AND TO REPLIES IN SUPPORT OF** |
| Defendants | **CROSS-MOTIONS FOR SUMMARY** |
| and | **JUDGMENT** |
| | |
| **IDAHO POWER COMPANY** and **PACIFICORP**, | |
| Intervenor-Defendants | |

## GLOSSARY OF ACRONYMS

| | |
|---|---|
| APA | Administrative Procedure Act |
| B2H Project | Boardman to Hemingway Transmission Line Project |
| Bureau | Bureau of Land Management |
| DEIS | Draft Environmental Impact Statement |
| EIS | Environmental Impact Statement |
| FEIS | Final Environmental Impact Statement |
| NEPA | National Environmental Policy Act |
| NTSA | National Trail System Act |
| PAC | Priority Area of Conservation |
| PHMA | Priority Habitat Management Area |
| SEIS | Supplemental Environmental Impact Statement |

**ARGUMENT**

I.    **PLAINTIFFS' CLAIMS SEEKING TO COMPEL PREPARATION OF A SUPPLEMENTAL ENVIRONMENTAL IMPACT STATEMENT ARE REVIEWED UNDER ADMINISTRATIVE PROCEDURE ACT SECTION 706(1)**

Federal defendants (the "Bureau") argue for the first time in the Reply in Support of their Motion to Strike that the Court's review of claims that significant new information requires the Bureau to supplement the Final Environmental Impact Statement ("FEIS") is governed by Section 706(2)(A) of the Administrative Procedure Act ("APA"). ECF No. 68 at 4. This is wrong, because the Bureau misreads *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 375–76 (1989), and *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 561 (9th Cir. 2000). *See id.* at 4–5. Its fundamental error is not recognizing that *Marsh* involved a challenge to a final agency action, but *Friends of the Clearwater* did not—and that this case does not. In *Marsh*, the federal agency had made a "formal decision" not to supplement its NEPA analysis, after which plaintiffs challenged the "decision not to prepare a second supplemental EIS." 490 U.S. at 367, 369. That decision was final agency action, subject to review under Section 706(2)(A). *See id.* at 376 ("review of . . . whether the Corps' determination that the FEISS need not be supplemented should be set aside is controlled by the 'arbitrary and capricious' standard of § 706(2)(A)").

In *Friends of the Clearwater*, the plaintiffs sought to compel the agency to supplement its NEPA analysis in light of new information. As the Ninth Circuit held, "[a]n action to compel an agency to prepare an SEIS, however, is not a challenge to a final agency decision, but rather an action arising under 5 U.S.C. § 706(1), to compel agency action unlawfully withheld or unreasonably delayed." 222 F.3d at 560 (citation and internal quotation marks omitted). Because the Bureau has never made any formal decision not to supplement the FEIS in this case, the plaintiffs here likewise seek to compel preparation of an SEIS. These claims are reviewed under

Section 706(1), not 706(2)(A). The Frederick Declaration, which offers one biologist's opinion on only a small part of the significant new information in this case, is not a final agency action or formal agency decision. *See* ECF No. 65 at 31 (describing scope of that declaration).

The Bureau implausibly argues that only new *agency-produced* information may be considered in deciding whether to compel preparation of an SEIS. ECF No. 68 at 5. This cannot be, given NEPA's public participation goal and an agency's duty to "be alert to new information that may alter the results of its original environmental analysis." *Friends of the Clearwater*, 222 F.3d at 557. In fact, in that case, it was *plaintiffs* who called the court's attention to the designation of seven new sensitive species in arguing the agency should be compelled to prepare an SEIS. *Id*. at 555–56. The Ninth Circuit agreed the agency violated NEPA's supplementation requirements "because it failed timely to prepare, or even sufficiently to consider and evaluate the need for, an SEIS in light of the seven new sensitive species designations." *Id*. at 558.

The Ninth Circuit held that plaintiffs can introduce new information for the first time in court, *id.* at 558–59, and also that later agency data "that, if timely considered, would have shown that the new information did not require an SEIS . . . does not demonstrate that the Forest Service complied with NEPA, which demands timely and reasoned agency action." *Id*. at 558. The later agency studies noted in the Bureau's Reply could not save the Forest Service from the holding "that the Forest Service's failure to evaluate in a timely manner the need to supplement the original EIS in light of that new information violated NEPA." *Id*. at 559. The Ninth Circuit considered later studies only to determine whether an injunction should issue to stop logging— not with respect to whether, under Section 706(1), the agency had violated NEPA in the first instance by failing to timely prepare or evaluate the need for an SEIS. *See id.* at 559–61.

//

## II.    DEFENDANTS' NEW ARGUMENTS REGARDING WAIVER ARE WRONG BECAUSE PLAINTIFFS FILED A COMBINED RESPONSE/REPLY BRIEF AND ALL ISSUES BEING LITIGATED WERE RAISED WITH THE AGENCY

The Bureau and intervenors ("Idaho Power") argue or suggest in their summary judgment Replies (ECF Nos. 71, 72) that plaintiffs waived issues by allegedly raising them for the first time in plaintiffs' combined Response/Reply brief, or because the issues were not raised with the agency. These arguments misrepresent the legal standards for waiver and the relevant facts.

### A.    Plaintiffs Filed a Combined Response/Reply Brief, and the Other Parties had an Opportunity to Reply, so the General Waiver Rule Does Not Apply.

The general rule that issues raised for the first time in a reply brief are waived does not apply to plaintiffs' Response/Reply brief, ECF No. 65. That brief is a combined Response to the two Cross-Motions for Summary Judgment and a Reply in support of plaintiffs' Motion for Summary Judgment. Because the other parties filed Cross-Motions for Summary Judgment—so as to have the "last word" in the briefing schedule—they cannot simultaneously insist that any arguments in plaintiffs' combined Response/Reply are waived.

The general rule exists because raising arguments for the first time in a final reply brief deprives the opposing party of an opportunity to respond. *See St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1165 (D. Or. 2015) (raising issue for first time in a reply brief "depriv[es] the Court of adversarial briefing on the issue"). However, when the briefing schedule—as here—*does* afford opposing parties an opportunity to respond, the waiver rule does not apply. *United States v. Boggi,* 74 F.3d 470, 478 (3d Cir. 1996) ("because of the cross-appeal in this case, the Government has had an opportunity to respond to the arguments raised in Boggi's reply brief. . . . Therefore, we deviate from the general rule"); *see Cedars-Sinai Med. Ctr. v. Shalala*, 177 F.3d 1126, 1129 (9th Cir. 1999) (no waiver when a defense was raised for the first time in a reply brief where opposing party was allowed to file a sur-reply).

B.      **The Waiver Arguments are Wrong Because Plaintiffs Responded to Arguments in the Cross-Motions or Issues Were Raised in Public Comments.**

There also is no waiver because the arguments allegedly presented for the first time in plaintiffs' Response/Reply responded directly to arguments made in the Cross-Motions for Summary Judgment. First, Plaintiffs' Motion for Summary Judgment argued that the agency failed to evaluate the effectiveness of compensatory mitigation, quoting the FEIS statement that the "FEIS admits that '[w]ithout successful implementation of compensatory mitigation measures to offset these high residual impacts, the B2H Project would substantially interfere with the trail's nature and purpose.'" ECF No. 43 at 39. To "[s]ubstantially interfere with the nature and purpose of the trail" violates the National Trail System Act ("NTSA"). *Id*. at 16 (quoting 16 U.S.C. § 1246(c)). The Bureau's Cross-Motion argued that it "identified the mitigation measures that would benefit sage-grouse and the National Trails System." ECF No. 53 at 27. Plaintiffs' Response/Reply fleshed out what the quoted language from the FEIS meant in terms of the Bureau's own promise to use compensatory mitigation to avoid substantial interference with the Oregon Trail's purpose (and not violate the NTSA)—not a new argument. *See* ECF No. 71 at 15. The Bureau had an opportunity to address this in its Reply. *See id.*

Second, the Bureau and Idaho Power argued in their Cross-Motions that 853,848 acres is the "habitat available . . . *according to the Oregon Department of Fish & Wildlife*." ECF No. 53 at 11 (emphasis added); *see* ECF No. 59 at 11. Plaintiffs' Response/Reply demonstrates that the state agency said no such thing, and that the figure is false—a permissible response, which Idaho Power addressed in its Reply. ECF No. 72 at 6. Third, plaintiffs' opening brief belies Idaho Power's assertion, *id*. at 8, that the distribution of birds was not raised in that brief. ECF No. 43 at 9–10 (arguing that the FEIS "contains no information about where the few remaining birds live within the area designated as PAC (and PHMA)" and that "if the few remaining birds cluster

in habitat harmed by the B2H Project, the risk of extirpation would be greater").[1] Fourth, Idaho Power's waiver argument regarding winter habitat is similarly misguided. ECF No. 72 at 11. Plaintiffs' opening brief argued "[n]or do the DEIS and FEIS disclose the location of critical winter habitat and where the B2H Project would pass through it." ECF No. 43 at 12.[2]

Finally, Idaho Power's new argument that *plaintiffs themselves* had to present detailed evidence of cumulative impacts of grazing and the Project on sage-grouse is wrong as a matter of law. ECF No. 72 at 15. An issue can be exhausted for litigation "if the issue was considered sua sponte by the agency or was raised by someone other than the [litigating] party." *Portland Gen. Elec. Co. v. BPA*, 501 F.3d 1009, 1024 (9th Cir. 2007); *see City of Davis v. Coleman*, 521 F.2d 661, 678 (9th Cir. 1975) ("It is up to the agency, not the public, to ensure compliance with NEPA in the first instance."). Comments do not require "precise legal formulations" or submission of detailed evidence to preserve issues. *Protect Our Communities Found. v. LaCounte*, 939 F.3d 1029, 1037–38 (9th Cir. 2019) (also holding that issues allegedly waived were preserved). Even simply urging an agency to consider an issue suffices to exhaust that issue for litigation. *Id.* The Bureau's duty to address cumulative impacts from grazing was raised in three sets of comments, cited in plaintiffs' opening brief. ECF No. 24 (citing AR_19863, 19884–914, 19894, 19908).

## CONCLUSION

For these reasons, the Court should reject the referenced arguments in the Reply briefs.

---

[1] This issue was raised in public comments. *E.g.* AR_19703–04 (data was missing regarding "location of leks" that was needed to assess how the line would affect leks and sage-grouse populations, and "[t]he current presentation of information about the location of leks and critical segments of sage-grouse subpopulations in relation to the proposed routes is inadequate.").

[2] This issue also was raised in public comments. *E.g.* AR_19703 (Bureau "must provide an assessment of how the project will likely affect sage-grouse, as well as their . . . winter habitat"); AR_19779 (After describing the importance of winter habitat to sage-grouse, noting that "[i]f a population of sage-grouse is cut off from accessing a seasonal habitat, the very survival of that population is placed in peril"); AR_19861 (draft EIS text section "with regard to sage grouse habitat failed to discuss the winter habitat needs of the birds").

Respectfully submitted this 29th of January 2021.

 s/ David H. Becker
**David H. Becker (OSB # 081507)**
Law Office of David H. Becker, LLC

 s/ Maura C. Fahey
**Maura C. Fahey (OSB # 133549)**
Crag Law Center

 s/ Oliver J. H. Stiefel
**Oliver J. H. Stiefel (OSB # 135436)**
Crag Law Center

Attorneys for Plaintiffs Stop B2H Coalition,
Jim Kreider, Carol "Fuji" Kreider, Gail
Carbiener, and Greater Hells Canyon
Council